Friedman, J.R, and Andrias, J.,
concur in part and dissent in part in a memorandum by Andrias, J., as follows: The majority finds that landlord’s sole remedy is to seek damages under the bond, if it is finally determined that tenants were not entitled to the preliminary injunction they obtained in this case, and that the motion court correctly dismissed landlord’s counterclaim for delay damages. Because I believe that, on the record before us, landlord is entitled to seek delay damages under both the bond and under a breach of contract theory based on tenants’ breach of the clause authorizing landlord to enter the premises to perform repair work during the lease term if tenants refused to do so, I concur in part and dissent in part.
In the period of 1989-1991, landlord constructed a new 24-story class A office tower at 101 Avenue of the Americas, consisting of more than 400,000 square feet of office space. Landlord leased the entire building to tenants on a net lease basis, for an initial 20-year term, with eight renewal options that could potentially extend the lease for approximately 79 years. Tenants elected not to extend the lease beyond December 31, 2011, at which time the lease expired.
*474 Pursuant to section 12.01 of the lease, tenants were required throughout the lease term, inter alia, to replace certain building-wide systems as they became obsolescent (the upkeep clause), so as to maintain the building in first-class condition. Pursuant to section 33.01, as of the end of the lease term, tenants were required to return the building to landlord in good repair (the surrender clause).
Section 21.01 (a) of the lease provided that “[i]f there shall be an Event of Default under this Lease, then Landlord, without waiving or releasing Tenant from any obligation of Tenant contained in this lease, may (but shall be under no obligation to) perform such obligations on Tenant’s behalf.” Section 20.01 required tenants to permit landlord: “to enter the Premises at all reasonable times (but not more frequently than is reasonable under the circumstances), on at least seven days’ notice . . . for the purposes of . . . (b) making any Repair . . . which Landlord ... is permitted to perform pursuant to the terms of this Lease, ... or (d) during the continuance of an Event of Default, making any Repairs to the Premises and/or performing any work therein, whether necessitated by a Requirement or otherwise.”
Section 20.02 provided that “Landlord . . . shall not be liable for inconvenience, annoyance, disturbance, loss of business or other damage of Tenant or any Subtenant by reason of performing such . . . Repair or other work.”
In April 2010, landlord informed tenants that they needed to immediately replace certain building systems that were allegedly obsolescent. Tenants refused. On December 15, 2010, tenants commenced this action seeking to recover revenue-sharing proceeds that the landlord had withheld. On December 23, 2010, landlord sent tenants a notice advising them “that Landlord has determined that you are in default of your obligations under Lease § 12.01 and § 15.02, in that you have failed to properly maintain and make ‘Repairs’ to the Building in each of the respects noted in Landlord’s prior itemizations.” The notice specified five categories of repair work and advised tenants that they were required to cure their defaults pursuant to section 24.01 (d) by completing, or at a minimum, commencing that work within 25 days, and that “if you fail to timely cure each and all of the above-referenced defaults . . . within the time specified in Lease § 24.01 (d), then Landlord intends to exercise its right under Lease § 21.01 (consistent with Landlord’s rights under Art. 20) to perform each and all of said Repair work itself, on Tenant’s behalf.”
On January 18, 2011, tenants moved by order to show cause *475 for a temporary restraining order and injunction preventing landlord from, among other things, “taking any action, including issuing any further notice or entering the Premises and interfering with such parties’ right of quiet enjoyment, for alleged purposes of ‘curing’ any defaults in the Retaliatory Notice, or otherwise interfering with such parties’ possession of the Premises.” Tenants sought the injunction on the ground that allowing landlord to perform the repair work during the remaining year of the lease would be highly disruptive to their ongoing occupancy.
Supreme Court issued the temporary restraining order and on February 17, 2011 held a hearing on the preliminary injunction. At the hearing, landlord argued that a bond should be required as a condition of the quasi Yellowstone injunction requested by tenants, to cover, among other things, the “delay damages” it would incur if it had to wait until tenants vacated the building before it commenced the necessary repairs. After tenants’ counsel acknowledged that tenants did not want landlord to go in and do the work before the expiration of the lease because it would upset tenants’ tenant, the court commented:
“I mean, I think it’s coming down to this: I either give you a limited Yellowstone that takes care of this issue of eviction, or I give you the broader Yellowstone, but on the condition that the mediation encompasses delay damages and that there’s a bond that includes the prospective delay damages. I don’t know what amount we’re talking about, but it’s certainly not going be $18 million, but something of that sort.
“You can’t have everything.”
On February 24, 2011, after the parties submitted additional papers, the court issued the broader injunction requested by tenants prohibiting landlord from, among other things, entering the building to conduct the repair work while tenants were in occupancy, and ordered tenants to post a bond in the sum of $4,708,242, which tenants timely posted.
On or about June 6, 2011, landlord served an answer in which it sought, as a separate element of damages on its first counterclaim, delay damages caused by the injunction, by which tenants blocked landlord from repairing the obsolescent systems during the balance of tenants’ lease term, as it sought to do in its notice. In October 2012, tenants moved for summary judgment dismissing the delay damages claim, arguing that the work was now done at less cost ($4.9 million as opposed to $7.4 million) and in less time (7V2 months as opposed to 9 months) than would have been the case if it had been performed while they *476 occupied the building. Tenants also argued that landlord undertook unrelated work during that time period by performing a gut renovation, and could not have rented the premises in any event. Insofar as landlord claimed that it would have been ready to re-let on January 1, 2012, tenants contended that there was nearly a year’s hiatus in landlord’s efforts to relet due to a disagreement among internal factions of landlord. Tenants also claimed that, as a matter of law, landlord was not entitled to delay damages under a holdover theory.
Supreme Court granted tenants’ motion, stating: “The court agrees with plaintiffs that the rule in New York is well established that the covenant to surrender property in good condition at the end of the lease relates only to the physical condition of repair. The rule of damages applicable to such covenant precludes the idea that loss of rent is included in it. There is no exception to the rule precluding recover of lost rent as delay damages. Plaintiffs were not holdovers because of defendant’s repair claims and cannot be liable for holdover rent.”
However, CPLR 6312 (b) expressly requires an undertaking to be filed to cover potential damages that could result from granting an injunction. “The purpose and function of an undertaking given by a plaintiff. . . is to reimburse the defendant for damages sustained if it is later finally determined that the preliminary injunction was erroneously granted” (Margolies v Encounter, Inc., 42 NY2d 475, 477 [1977]).
Here, landlord’s delay damages claim is based on tenants’ obtaining a broad injunction that prevented landlord from exercising its explicit contractual right to enter the premises to perform work itself, after tenants refused to do so, before the expiration of the lease and tenants’ surrender of the premises. The injunction was conditioned on tenants’ posting a bond which foresaw that the issuance of the injunction might interfere with landlord’s anticipated rental income after tenants surrendered the premises and that the damages incurred in the event it was determined that tenants were not entitled to the injunction would include delay damages.
Under these circumstances, in the event it is determined that tenants were not entitled to an injunction, landlord is entitled to recover, if proved, all foreseeable damages contemplated by the bond, including delay damages.
Landlord also has a viable breach of contract claim based on tenants preventing it from exercising its contractual right to immediately perform the repairs during the lease term that were required by the upkeep clause.
Section 24.01 (d) of the lease provides that an event of default *477 shall occur “if Tenant shall fail to observe or perform one or more of the other terms, conditions, covenants or agreements of this Lease or the Operating Agreement and such failure shall continue for a period of 25 days after written notice thereof by Landlord to Tenant specifying such failure.” Section 24.02 provides that “[i]f an Event of Default shall occur, Landlord may elect to proceed by appropriate judicial proceedings, either at law or in equity, to enforce the performance or observance by Tenant of the applicable provisions of this Lease and/or to recover damages for breach thereof.”
The lease contains no limitation on landlord’s right to recover damages for a default under the upkeep clause or from tenants’ blocking landlord’s contractual right to perform the systems repair work itself if tenants fail to do so. Thus, landlord is entitled to recover its economic losses, including delay damages, if proved, that were caused by tenants’ breach and that the parties had reason to foresee as a likely result of the breach (see Inchaustegui v 666 5th Ave. Ltd. Partnership, 96 NY2d 111, 116 [2001] [“Under settled contract principles, however, the landlord ... is entitled to be placed in as good a position as it would have been had the tenant performed”]; Ashland Mgt. v Janien, 82 NY2d 395, 403 [1993]; Goodstein Constr. Corp. v City of New York, 80 NY2d 366, 374 [1992]; Kenford Co. v County of Erie, 73 NY2d 312, 319 [1989]). This is of particular importance to a landlord in a long-term net lease that obligates the tenant to keep building systems up to date so as to maintain its class A status, and to hold otherwise would essentially read the upkeep clause and landlord’s right to perform the repairs itself during the lease term out of the lease.
Cases such as New York Univ. v Cliff Tower, LLC (107 AD3d 649, 649 [1st Dept 2013]), on which the majority relies, are inapposite since landlord’s claim here is based on the upkeep clause, not the surrender clause, and since delay damages were contemplated when the injunction was issued at tenants’ behest to prevent the landlord from exercising its contractual right to self-help.
The majority notes that upon vacating the premises, tenants left nothing behind preventing landlord from reletting the premises to a new tenant. This misses the point. The lease obligated tenant to replace obsolescent systems so as to maintain the building’s class A status, thereby protecting its rental value, and the fact that tenants left nothing behind is not relevant to their breach of the upkeep clause and their decision to prevent landlord from performing the repairs during the lease term. Insofar as tenants contend that the evidence in the record *478 undermines landlord’s claim that it was prepared to relet the premises upon the expiration of tenants’ lease, or that landlord did not in fact incur any delay damages because the necessary repairs could have been made within the same time period as the gut renovation, these arguments raise issues of fact, which may not be determined on a motion for summary judgment.
Accordingly, I would reverse, and deny the dismissal of defendant’s counterclaim for delay damages and reinstate the bond.